## THE BUFFALO.

### CLARK v. THE BUFFALO.

*(District Court, S. D. New York. May 12, 1892.)*

COLLISION—VESSEL AT ANCHOR—FOG—MOVING STEAMER—NEGLECT TO MAKE SOUNDINGS.

The schooner R. was at anchor in the usual anchorage ground in President roads, Boston harbor, in a dense fog, and was properly ringing her bell. *Held*, that the R. was entitled to recover the damages occasioned by her being run into by the steamer B., which was slowly moving across the anchorage ground for deeper water, at least 1,200 feet out of the ordinary course of such steamers, there being no difficulty, if, as alleged, the compass was unreliable, in ascertaining her position in the fog by soundings, which the steamer had neglected to make.

In Admiralty. Libel for collision. Decree for libelant.
*Owen, Gray & Sturges*, for libelant.
*Foster & Thomson*, for claimants.

BROWN, District Judge. At a little before 3 o'clock in the morning of August 23, 1892, the libelant's schooner Luther A. Roby, while lying at anchor in President roads in the harbor of Boston, was run into by

the steamship Buffalo, in a dense fog, and her bowsprit broken, her headgear carried away, with other damage, for which the above libel was filed.

The Buffalo was outward bound; the weather was clear at a little past 2 A. M. when she left her dock, but in about 20 minutes after she had got around and headed upon her course, she ran into a dense fog, when at Castle island, where the channel is narrow and does not furnish suitable anchorage ground. She, therefore, continued on slowly in the first of the ebb tide, sounding her fog whistle and intending soon to come to anchor. No bell was heard from the schooner, nor was the schooner seen until she was within one or two hundred feet of the Buffalo, when her masts appeared first in the lighter fog above, a very little on the Buffalo's port bow, and too near to avoid collision. The Buffalo's engines were thereupon put ahead half speed, and her helm hard aport, which probably prevented greater damage by enabling her to clear the schooner's hull.

For the claimants it is contended that as no bell was heard, none was properly rung upon the schooner. One man, the night watch, was alone on deck. The testimony, no doubt, shows that when the steamer's approach was recognized by him, he rang the bell more continuously and noisily than before, so that several men below came speedily on deck; some, a little time before collision, and others, at the moment of collision. But the fact that several of them were thus roused and came up before collision, shows that the master of the Buffalo and others are mistaken when they claim that no bell was rung until *after* collision. If, as they say, they did not *hear* any bell before collision, the reason why they did not heed or notice it must be sought in some other circumstance than that the bell was not rung. The explicit testimony of the lookout that he had been previously ringing the bell at proper intervals, is confirmed by several witnesses on board the schooner; and the fact that he did recognize the steamer's approach at some little distance, and did then ring the bell continuously and violently, is proof that he was attentive to his duties.

The pilot of the steamer, on the other hand, testified that he was about to anchor. He says:

"We intended anchoring about where the stern of this schooner was. We had taken it up. I says: ' We cannot proceed. We have got to anchor. I have got to get a couple of lengths further to the eastward before we can anchor in order to get more water.'"

The hands were already forward to attend to this. Among the different causes that might prevent the schooner's bell from being heard or noticed, partial preoccupation of the mind by other duties is certainly not to be excluded. I cannot find from the testimony that the schooner's bell was not properly rung.

The schooner was at anchor in a usual and proper place, and her bell was properly rung. The steamer is, therefore, legally bound to pay the damage she caused, unless it resulted from inevitable accident. *Steamship Co. v. Calderwood*, 19 How. 241, 246; *The Granite State*, 3 Wall.

310; *The Louisiana,* Id. 164, 173. The circumstances do not justify the finding of inevitable accident. The real cause of the collision is found in the fact that the steamer was, and for some time had been, considerably to the southward of the usual and proper course, whether in leaving the harbor, or in search of anchorage ground for such a vessel. The schooner had come to anchor in 3¾ fathoms of water, between Spectacle and Castle islands, probably about ¼ of a mile S. E. by S. of black buoy No. 7. The steamer drew 22½ feet of water forward, and she could not anchor safely where the schooner lay. In going further to the southeastward to get a proper depth of water, as was doubtless the pilot's intention, he had no business to be running, as he was, across anchorage ground in fog at least 1,200 feet to the southward of the ordinary course of such steamers in going between buoy No. 7 and the "Lower Middle." *The Middletown,* 44 Fed. Rep. 941.

I find it difficult to understand fully the account given by the pilot of his course. That he made some attempt, however, to correct his false position, is clear. If there was difficulty, as he intimates there was, in steering by compass, as the steamer was an iron ship and light, there was no difficulty in determining the proper line of her course by soundings between Castle island and the Lower Middle; and soundings would have made clear that he should be more to the northward. This alone is sufficient to prevent the collision from being treated as an inevitable accident.

There is considerable difference in the estimates of the speed of the Buffalo at the time of collision. Mr. Limerick, who was near the steamer's port rail as the broken bowsprit went past him, estimates the time at "not more than ten or fifteen seconds" between the first blow and the second, which were 90 feet apart; and that the bowsprit drew astern along the port rail at about a walking speed. Both these estimates would indicate a speed at that time of about 3½ knots. It is unnecessary, however, to comment further upon the testimony on this point, as I cannot find the schooner in fault, or the accident inevitable.

Decree for the libelant, with costs.